Good morning, and may it please the Court, my name is Tyler Newby, and I represent NeoCortext. NeoCortext publishes an entertainment app. It allows users to draw from a library of preset images and GIFs, short videos that are taken from TV shows or from movies, and then take a photo of the user's face. NeoCortext's Reface app then kind of melds those, the photo of the user's face, inserts it into the image or the video clip, and then creates a new entertainment photo. The users can then distribute those, and when they do that, if they are free users, it will include a watermark that says made by Reface. The claimant here, the plaintiff here, is an actor, something of a minor celebrity who appeared on a TV show called Big Brother on CBS. One of his clips or some clips from that show were included in the preset libraries that were in the Reface app, and when somebody allegedly created a meld of their face with those clips, he claimed that that is a violation of his rights of publicity under California's Civil Code 3344. We filed a motion to strike in the district court and under California's anti-slap law, and our position was that this is really an infringement or it's a law that's, I'm sorry, a lawsuit that is aimed at chilling the free expression of my client and of its users. The resulting images are ones that are created both from my client's speech and from the user's use. Can I move you ahead in the discussion? Yes, your honor. So, you both are fighting about whether the anti-slap statute applies at all. Let's assume it does, and I'm just moving to the step two analysis in the anti-slap statute. The issue for decision for the district court was whether or not, in effect, the complaint should have been dismissed for failure to state a claim. It's a Rule 12b-6 analysis. It may be a terrible complaint, but I'm having trouble figuring out why they didn't state a claim. All the elements of the alleged tort, because it comes from a statute, seem to be pleaded. And you have some defenses, which seems to me would depend on development of facts. And so I'm trying to figure out why, at least at this stage, the 12b-6 order isn't something we should affirm. So if you could sort of skip ahead in the argument to that and address that for me. Certainly. So, two points there. One is, you're correct, it's a 12b-6 standard for the anti-slap motion when it's based on an allegation that they have not pleaded a cause of action under the law. And our first argument there was that what they have pleaded is essentially a claim that is preempted by Section 301 of the Copyright Act. Well, see, but that's — let's just stop for a second. But in order to do that, don't you have to establish facts not in the complaint, like that you have a copyright and the extent of the copyright? No, Your Honor. We don't. So copyright — and the subject matter here, right, the copyright preemption analysis is a two-step analysis, and this is often — it can be raised and is raised at the 12b-6 stage. What they've alleged is that there were videos taken from a television show. Those are fixed in a tangible medium. That is the subject matter of copyright. And secondly, that users using our app created a derivative work. Right. So your position is that you have an absolute right under the copyright laws to use the image from the show for any purpose whatsoever? It's a — The Copyright Act doesn't give you the right to use the plaintiff's image. Well, so, Your Honor, this — two questions there. The — first of all, the copyright preemption does not require us to have a license to use those works. No, but what's copyrighted is the work. Work. Correct. It is not — you don't have a copyright in his image. Correct. And this is the issue — So, I mean, I think there are lots of issues that might need to be tried over why you think you have a copyright in his image. We are not claiming that we have a copyright in his image. We are claiming that the right that he is claiming here is one that is preempted by the Copyright Act. And here's why. And this isn't the exact issue that came up in T3 — the Maloney and T3 case and the Downing case. I think these are kind of the two cases that are competing against one another in this one. So, in Maloney, this is the exact argument that the plaintiff made and what the plaintiffs here are making, is that they're not seeking any — to enforce any rights under copyright. They're just seeking to enforce his right over his image or his likeness that appears in the video clips that are then distributed by users after they do this meld using reface. Well, they're not seeking to enforce a copyright interest in his image. They're saying that you're using his image for an improper purpose. Their claim isn't that you can't publicize his image in general. Your claim is that you can't use it in order to promote a new product. And that's always the claim in a publicity case, right? Yes, of course. And so that was the exact claim and the argument that this court addressed in Maloney and in the Laws v. Sony Music case. So, in those cases, Maloney — this is a case where a website was the licensed reseller of photos taken from NCAA events. And the athletes sued. And they said, well, you can't use these thumbnails of us in sporting events to promote the sale of these photos. And this court said, well, that's — what they're really arguing is that they're trying to stop the sale or distribution, reproduction of copyrighted content. And while they may say that they're trying to protect their image or their persona that's in those photos, ultimately, what is being sold, what's being advertised is the sale of a work in a tangible medium that is protected by copyright. But their images were the protected right, were they not? It was the photograph. Right. So that photograph was copyrighted, was subject to copyright protection. So we were dealing there with the — that was the entirety of the — and the claim was that the use of that photograph someplace else violates my privacy rights. Here we have a slightly different case because you will agree that the image of their client is not subject to copyright protection. What's subject to copyright protection is the entire work. So in the case you're talking about, we were looking at the entire work. And here we're looking at a — something that goes into the entire work. Is that the same? I think it's — so I would disagree that a clip, a still, an excerpt from a copyrighted television program is not subject to copyright. It's still within the rights of copyright. Whether that's an infringement or not, that's for another court to decide. So you licensed these clips from the creator of the clips? I'm sorry, in — Your client. So — How did they get the rights to show the clip? So my client has a — and this is, again, I'm dealing with what's alleged in the complaint. What's alleged in the complaint is that they sourced this library of presets from a number of different other libraries, one of which is called Tenor. It is essentially a library that — Licensing libraries? They licensed a library from Tenor, which is a — it's a collection of GIFs, short video clips. And that is what fed into this library of presets that users were able to use. Some of those, and most relevant to this case, the clips from Tenor came from the television show Big Brother and one of the other shows that he appeared on, on CBS. Now, the — what is ultimately being used or done here is the creation of a derivative work from those clips. I don't think there can be any dispute that a television show or excerpts of a television show are subject to copyright. And similarly, the modification of that implicates the right to create a derivative work and to distribute it, right? Distribution, derivative works, those are fundamental rights of copyright. I'd also harken back to the law — And nobody — I don't think anybody questions your ability to produce a clip and distribute it. The question is whether you can use his image in that clip, because what eventually happens is his image gets placed onto something, right? You take the library, you know, somebody looks at the library and they put their own face over his image or something like that. So the question is whether or not you can use that to promote this other product, right? It's not whether or not you — if you had a derivative work, you could — you'd be violating copyright law. That's not the issue. Well, I would agree that if this were a case like Downing where my client were taking these clips, the melded clips, the refaced clips, putting out advertisements saying, hey, you can — you too can do this, come subscribe, that's a different case. Or come buy this other service. That's a different case. Ultimately, what's being distributed here are the modified derivative works. They're being distributed by users, not by my client. And those derivative works include a watermark that identifies reface as the source of those works. Can I take you in a wholly different direction for a second?  And one of the issues in this case is whether the anti-SLAPP law applies in federal court and whether or not we have jurisdiction over interlocutory appeals. There is currently pending an in-bank case that raises those issues. I think it's fair to say that whether it's that case or some other case, this court will resolve those issues in the next six months to a year, in which case we would just hold on to this case and wait until then. And my prediction is we will find — but I only predict that there is no jurisdiction. Well, there may be a compromise. Yes, who knows? But I guess what I'm suggesting to both parties is the most likely outcome of today's case, given these other cases pending, is that we'll just hold on to it. And we'll hold on to it until those other cases are resolved. Put aside my prediction about how they will turn out. Does it make sense for both parties under these circumstances just to go back to the district court and file summary judgment motions and get what will be, even after these cases are decided, a final appealable order? In other words, do you want to be stuck in limbo? You want to be stuck here? Well, you seem to have some really good arguments. I'm not sure they defeat the 12B6 motion, but they might well succeed on summary judgment. Hope springs eternal on my side that the court will continue to follow its precedent on the Erie issue and the collateral order issue. I think the question is that even if that is ultimately the decision of this court, it's going to take some time to deal with the current case that's sitting on bonk. And other — just earlier this week or last week, there was another order from another three-judge panel on a case requesting briefing to take a case relating to the appealability of a denial of an anti-SLAPP motion on bonk. So it's going to take some time for this court to get out a ruling on this issue. And you might very well be right that the ultimate conclusion is that these — you can bring these appeals. But I think the question from this panel is why wouldn't — you know, as opposed to holding this pending that decision of an en banc court, perhaps the party should go back and continue to litigate these issues to summary judgment. I'm not demanding. I'm just raising this issue for both of you to consider. I think it will be a year, probably, before we have — Or even longer, depending on — It may be longer before we have a decision on this issue. We don't even have to brief you on this. And in the meantime, you'll both be twiddling your thumbs. I guess you're happy to stay here and just wait. Yes. And the reason why we brought this motion — My client's a small company, right? And I know it doesn't matter if you're big or small or an individual or a corporation. The anti-SLAPP law applies equally. But the law is intended to protect speakers from the onerous costs of litigation in these cases. And that is a substantial issue for my client. And this isn't just an individual case. This is a class case. So there's a whole procedure for — I mean, you understand that we're not going to — we're probably not going to proceed when there are cases, in-bank cases, pending, raising our — whether we have the jurisdiction to proceed. So is there a way in which this case can be decided without reference to the anti-SLAPP? Or is that the only thing that gets you here on appeal? It's because anti-SLAPP is a collateral order that — over which we have jurisdiction on the appeal. I mean, is there a way we can decide this case without deciding the anti-SLAPP issue? Not at this stage. It would just be an interlocutory denial of a 12B6 motion. Correct. Which we can't decide. We'd have to take it up on mandamus. So let me — I understand your position. I just want to ask one question on the merits. Whose speech is at issue in this case, do you think? And I understand this is an issue that they have also raised. Our position is that it is both the speech of our client and of its users. And that — How is your client speaking by putting — their ultimate complaint is that this clip is in the library. So I'm trying to figure out why that speech, why putting a clip in a library is speech. The origin clip is part of, ultimately, what gets created — or gets modified. And then the modification, which is started by the plaintiff, but is enabled by my client's app, and then results in a final product, derivative work, that has a watermark that my client inserts. These are just the allegations. They're not complaining, I think, that — about the ultimate product. They're complaining about the use of their client's image as a step in creating the ultimate product. I don't think that's quite — Because the ultimate product has my face in it, or the face of the user. He substitutes his face for their client's face. So I'm just trying to figure out where along the way you think your client is speaking. My client is speaking when it helps create. It is a part of the process of creating the resulting clip and the insertion of its watermark. Yeah, it seems to me that the insertion of the watermark might be your client's speech. But the changing it to insert your own face is third-party speech. It is partly third-party speech. It's partly my client's — See, because they're not complaining about the creation of the watermark. They are. Well, I mean, at least I don't know how they can. What they're really complaining about — they're not complaining that a picture of me is created. What they're complaining about is that it was created off of a library that contains their client's picture, right? I think ultimately what they're complaining about is that the creation — the addition of the watermark on the resulting image is what makes it an advertisement and makes it a commercial use of their persona. Right, but that's not — But that's not — I see. So you think you might be able to — the case would be different if there were no watermark? I think we'd have to ask the plaintiff that, but that's how I read their complaint. Okay. And I'd like to reserve the rest of my time for rebuttal. All right. Thank you, counsel. Hello, Your Honors. Aaron Lawson on behalf of the plaintiff, Kylan Young. I'll begin with the very practical question that was posed. And in short, I think we would prefer to continue developing the record. Of course you would. Absolutely. That's why I asked him. And I believe that the case has only stayed because of a stipulation, because this is a collateral order in this court, and so this appeal would jump the line and ordinarily wouldn't take as long as a traditional appeal. And if that's not going to be the case, I think our position on that stipulation would change and we'd probably ask the district court if we could just get moving again. I'm not sure you can. The case is appropriately in front of us. I'm not sure the district court has jurisdiction to continue to proceed. With respect to a collateral order over which we have jurisdiction. Yeah, it doesn't. We could. You're certainly free to make that argument to the district court. That's a fair point. Your friend will be back here in 20 minutes if you do. You would have to remand it for the district court to proceed, so. You could, I suppose also, I imagine there's a mechanism where we could ask the district court to certify the appeal under 1292B. I don't think you can certify a question that's already subject to 1291. Well, if you certify the motion to dismiss as it's by itself, which is ostensibly distinct from the motion to start. You'd be certifying with us. We're not going to take it. I don't think the certification is appropriate under 1292. So there may be no practical solution here. Yeah, no, I think the bottom line is that you may be just stuck for a year on a case that stayed, and whether or not the state can be partially lifted to allow discovery or something, I don't know. But I think that's a quite realistic possibility. Slings and arrows of appellate practice, I suppose. I mean, alternatively, we can apply our precedent as it currently stands and decide these issues that you brought in front of us. So maybe you can answer for me why. Assuming we agree that the public interest exemption applies, why isn't this artistic work? Well, I don't think we necessarily disagree that the image that is generated by the user sands the watermark is something that might qualify as artistic work. There's very little precedent on that, of course, in the California courts. The only published decision I could find says that a theme park is not an expressive work, not an artistic work. But what we are objecting to is the use of that image with the watermark to solicit downloads and purchases of this app. And so I think... Well, but that's why I'm having trouble understanding your privacy claim. Your claim is that they are using your client's image to promote their product. Correct? Yes. Your client's image is not in the watermarked product, is it? What's in the watermarked product is my image, the user. I substitute my face for your client's face. But isn't it just the face that's been substituted and the rest of the image? So you're arguing that his body is what the violation of the right of publicity is? Yes, yes. And I think that the cases have said that likeness is about really identifiability. It's not just the face. It's can we tell who the person is? And I think the district court's observation that's really germane here is that the rest of the body stays the same and this image is... It's presented in an image in the context in which it became famous, right? So for Mr. Young, it's an image or... So you're not complaining about his actual image being in the library? That is not the subject of the publicity. So your only complaint is that, as your friend says, when this watermarked version for non-subscribers is produced, that violates his right of privacy? Right. At that point, they're using... So let's assume for subscribers who don't get the watermark on it. You're not making a claim that that violates your right of privacy? That the mere use without the watermark? No, that's not the subject of this publicity claim. It's just the use of the likeness to advertise, to solicit subscribers. That's the crux of your claim? That is the claim, yes. Okay. So I think I'll continue with sort of the 12B6 issues. The copyright issue, I think the district court got this exactly right. The question when we're applying copyright preemption to a right of publicity claim is, does the claim focus on use of the likeness or is the likeness invoked as a pretext to prevent distribution of the underlying work? I think that's what this court said in the Laws case, right? Are you focused on the likeness used in that case, it was merchandising, used to help sell a product or are you using it to fight over control of the work? And we're not trying to prohibit distribution of episodes of Big Brother. We're not trying to prohibit stills and clips from episodes of Big Brother or The Challenge. It's just the use of Mr. Young's likeness and the likenesses of other class members to advertise for this app. So I think this is very clearly on the non-preemptive side of the line as the district court concluded. On the transformative use defense, very briefly, right, this is... And this is a, this is, so I understand it, this is a state law transformative use defense, not a copyright law transformative use defense, is it? I think it is developed by the California Supreme Court, but I, my understanding of the... But it's developed, California Supreme Court is developing it in its interpretation of this statute, right? Right to publicity, which is really odd. Yeah, so I think that the work that it's doing is that the Supreme Court's Zucchini decision tells us that we have to somehow balance First Amendment rights with the right of publicity, that the First Amendment rights are not absolute. No, but I'm trying to figure out what, what the scope was. So in other words, if this were a copyright case, and they were suing you for violating their copyright in the, in the underlying clip, I'd have, we'd be fighting about whether or not putting a different face on it was a transformative use. That's a fair use. Is that, is that what we're fighting about here too, or is it a different test? Well, it is, it's very similar, and I think Comedy 3 very self, is very self-aware about this. They, they're pulling this from fair use. Yes. They feel that they have to balance the right of publicity with the First Amendment, and they're going to borrow from the copyright law of fair use, which has a lot of other... Well, it did, yes, they did reject about half of the traditional fair use test in, in this application. So is that a legal test or a factual test? I, I think it, I think it's largely factual, but at this stage, the question is simply, can we establish it as a matter of law? And, and I think the answer is pretty clearly no, that, that the defendant can't establish this as a matter of law because, well, for two reasons. One, the only change to the likeness is to the face. There's no change to the context, to any other part of the body. You are supposed to be able to tell who this person in the image is before the face has been changed. And so I think that the Hilton case is, is very, is, is our best case there, right? You had Paris Hilton's likeness. It was modified in a number of ways, many more ways than we have here, but you could still tell it was Paris Hilton. And this court said that doesn't establish this defense as a matter of law. And I think there's a principle from some of the video game cases, the Band Hero case, the NCAA football case. In those cases, you had identical likenesses. They were set within a, a much broader context, which was the original work of the video game developers. But what the court said is, look, you are exploiting the likeness to sell this game. That's where the commercial value of this is coming from. And I think that is also true of this app. So let's go back to their copyright defense, because the third one is that you didn't sufficiently plead knowingness. And let's skip that for a moment. On their copyright defense, what they're saying is, we have the copyright in these clips. Well, someone has a copyright. Someone has a copyright in these clips, not us. And we assume they're licensing. Well, I think part of the reason this looks weird is that that's an open question. Well, and that's, thank you. That's what I was trying to get to, and Judge, Judge Wardlaw sort of, is there an open factual question about whether or not the defendant in this case has the ability to assert the copyright law? Well, yes. I don't think it is this question necessarily, because, again, for preemption specifically, we're looking at, is it copyrightable? And if you look at, I'll say for instance. No, I understand your preemption argument. Well. But I'm trying to figure out a different argument, which is that, would there have to be some factual development at the trial court concerning the standing of this defendant to assert a preemption defense? Normally, we hear a preemption defense from a copyright holder or a licensee. And I'm trying to figure out whether I know on this record what these guys are. I think our position would be that, I'm not sure that that matters to their ability to assert preemption as a defense necessarily. I can assert copyright preemption as a defense in your case. Well, it would be odd for you to come in as a third party. I mean, I'm just trying, don't you have to have some relationship to the copyright? Often, I mean, it's a weird question because it's, I'm not sure I can think of a case off the top of my head where it hasn't happened. It can't be abstractly preempted. Yeah. It has to be in the context of a copyright. In the context of a claim. In other words, are they entitled to assert preemption? And they may well be. They may be a licensee. They may have been assigned the rights of the copyright holder. I don't know. I'm trying to figure out whether I know that they're, whether they're entitled to assert a complete preemption defense. In other words, do they have any interest whatsoever in the copyright? Well, I think they'd probably tell you. I would suggest no, but I cannot give you a case off the top of my head. Would you have any discovery to determine that? That would be useful. We might also want to determine, you know, the extent to which AI is involved here and whether the resulting images produced by this app are even copyrightable for lack of human authorship. I mean, these are all sort of open questions related to copyright. I think the district court got it exactly right, though. The part of the image you're complaining about was not created by AI. The part of the image you're creating about, you're complaining about, is the non-head part, is the non-head body. That's fair. We know that wasn't created by AI. It came from the clips in their library. But I think there's some question about at what point do we not have enough human authorship. But for present purposes, this claim focuses on the use of the likeness. The likeness is not copyrightable. And I think that we can just end the discussion right there. I think the district court got that exactly right. That, unless you want to talk about the knowing piece, the knowingly piece of the 12b6 part of this appeal. Well, is there a knowing requirement? The statute seems to say so. Yes, it does have to be knowingly. And did you plead it? I believe that we did, right. Can be either actual or constructive knowledge. California cases say that to act knowingly means to act with awareness of the relevant facts. And I think you can infer constructive knowledge from the fact that we have a library that's been compiled by the defendant that is searchable by name. This is what the district court said. And I think you got this exactly right. That that suggests that they should know who is in this library and whose images are being used to solicit download. One reason I didn't ask about it is it seems to me an unsatisfactory solution. If we find that you didn't plead knowledge sufficiently, it'll go back to the district court and you'll plead knowledge sufficiently. So there may be a fault in your pleadings, but it doesn't seem to me this is a case in which you can't plead constructive knowledge. I can't plausibly plead constructive knowledge. I mean, I agree. I think we've already done so. You know, in the district court, the defendant's principle argument was, well, we don't have a library of these images. We're just pulling them from the internet. But that, I think, is pretty well refuted by paragraph 15 of the complaint. And I think the district court recognized that that shows something sufficient for constructive knowledge, and I believe we'd be able to add to the complaint if this court thinks that is what needs to happen. So that is all of the real merits issues. Just briefly on whose speech this is in connection with a public issue, right? As the defendant has presented this case, it's the use of the images by the users to put their own face on the bodies of these celebrities. That's page 18 of their reply brief. We haven't found a case in which a defendant could invoke the anti-SLAPP law by relying on a third party's speech in connection with a public issue. The text of the law doesn't seem to support that either. Well, the text doesn't say anything about it, to be fair. Well, I think that the text says that we're asking for, if your claim involves the conduct of a person in furtherance of the person's right to petition or free speech in connection with a public issue, and I think every time California courts have addressed this language, they've been very clear that we're talking about the defendant's speech in connection with a public issue. My fair saying, this issue has never come up in the California court. Not so far as I can tell. But isn't Neocortex arguing that their distribution of this image is, in fact, their speech? And I don't disagree that they are making that argument that some of the things they are doing are speech acts, but the speech in connection with a public issue is the user's, and that, I think, is the key. Well, so there, I mean, I understand your public issue argument, but everybody seems to agree that what's being attacked here is this watermarked image, right? It's a form of commercial speech by them, is it not? You're saying it's an advertisement. Well, I'm saying that that is commercial speech, and I think that is the conduct that is in furtherance of the speech in connection with a public issue. Now, so I don't understand why that alone doesn't make it speech within the, forget the exceptions and the exemptions, but doesn't that alone make it speech within the, at least the initial scope of the inquiry? I think that it doesn't. There is conduct in furtherance of speech on a public issue, but it's not the defendant's speech on a public issue or in connection with a public issue. But you're attacking, as I understand it, their publication of this image with a watermark on it and your client's body, but not his head. Isn't that them speaking? Yes, and I think that is their speech, their conduct. Now, I understand your argument that that's not, that doesn't fit within the exemptions and exceptions, but you agree that's speech, do you not? Well, I agree that it is a speech act. We can evaluate the First Amendment defenses for raised. And if there were no exceptions or exemptions, then this would be covered by the Anti-SLAPP Act, would it not? I would disagree, because I think as they've presented it, right, the public participation here is what the users are doing. And our lawsuit doesn't have anything to do with what the users are doing. It's what the defendant is doing to solicit downloads of the app. And so I think that pulls it out of the scope here. But again, I think there are any number of ways to affirm this judgment on the merits if you're not inclined to hold it for a year or two years, any of the number of things we've discussed so far. My problem is that these cases deal with our jurisdiction. And put aside the district court's jurisdiction to consider, that's a separate issue. But the cases deal at least in part with whether we have appellate jurisdiction to review the denial of this motion. But I'm wondering, too, whether it's one thing if we're, like, denying it, saying it doesn't apply, versus affirming it, but saying it does apply and this appeal is properly here. Anyway, I'm just wondering. That's a Fed court's question, and it's been about 12 years, so. Yeah, well, we live with it. And thank you for that. And I'll yield the remainder of my time. Okay, thank you. Mr. Newby? Thank you. I just want to address the question the panel's raised about, does my client need to be a licensee for it to be able to assert copyright preemption? And I think the answer is no. The question in copyright preemption is, is the right that's being asserted, or is the act that's being challenged in the complaint, A, within the subject matter of copyright, and then B, if it is, is the right equivalent to one protected by copyright? There's, it's true that in most of the cases, if not all of the cases, where this has come up in the anti-SLAPP context and the right of publicity, the defendant has been a licensee or has been the creator itself, you know, in the case of laws, it was Sony Music who licensed a song, or actually was the licensee of a song that was sampled. It was not the complete song, but it was sampled in the resulting work. And... Does the record tell us what your client's interest is in the clips? Put aside the watermarked image. It doesn't, but it's not relevant to the... Well, I understand your argument it's not relevant. I'm just, maybe the record would solve the issue for me if you could tell me where it was, but it's... No, and that's why, it doesn't, but, you know, our position is that you don't need more factual development on that because it's not relevant to the preemption analysis. Now, it could be later some copyright owner comes after my client and says you're infringing our copyrights. Yeah, that's my next question. So, let's assume you'd stolen these clips from somebody and then used them to do exactly what you're using them now for. You still could assert a copyright preemption defense? Well, if we were being, so if we were being sued for copyright infringement, that's... No, no, no, not this case, I mean, in this case. Right, but if we were, then no, we couldn't argue preemption because the copyrights... No, but this, I'm thinking about this case. You stole them from somebody, they're not yours, you've got no claim to ownership of them, no claim to right to use them, the owner doesn't care because what the hell? I don't want to, I don't want to have a lawsuit. The copyright... These guys make exactly the same complaint they're making now. I take it your position is you would be entitled to assert a copyright preemption defense to their publicity claim. Yes, preemption applies nonetheless. I see my time is up, thank you. Thank you, counsel. Young v. Neocortex is submitted and this session of the court is adjourned for today. Thank you. All rise. This court for this session stands adjourned.
judges: WARDLAW, HURWITZ, DESAI